UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GILBERT SALAS ANGULO, | No. CV 08-05149-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") gave proper

```
                consideration to the testimony of Dr. Sparks, the medical
                expert ("ME"); and
     2.    Whether the ALJ gave proper consideration to the testimony
           of the Plaintiff.
```

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed, and the matter remanded for new hearing.

**THE ALJ FAILED TO PROPERLY EVALUATE**

**THE TESTIMONY OF THE MEDICAL EXPERT**

This is a case in which the record documents an extensive and lengthy history of treatment and surgeries relating to on-the-job back injuries suffered by the Plaintiff. The record demonstrates that over a period of years, Plaintiff underwent a series of procedures and surgeries: an anterior and posterior decompression and fusion on January 12, 2001 (AR 163-169); further decompression of the nerve root on February 4, 2002 (AR 305-306); a hernia repair on August 28, 2002 (AR 277-278); a discogram on November 17, 2004 (AR 186); and an MRI on November 17, 2004 (AR 224). Along with these procedures, both the physicians who performed surgeries, and other examining and treating physicians found a myriad of back-related deficiencies which are well documented in the record, and include the following: decreased range of motion in positive straight-let raising (AR 309); reduced range of motion in the lumbar spine and other areas (AR 291, 297-298); post-lumbar fusion syndrome, left leg radiculitis, inguinal hernia in 2002

(AR 292); significant decrease in range of motion and tenderness on September 30, 2002 (AR 282); a prognosis of ongoing pain on August 28, 2003 (AR 243); reduced range of motion, slow gait, positive straight-leg raising in the seated and supine positions, positive Lasegue tests, positive Fabere maneuver on the left, decreased sensation in the left thigh, decreased sensation in the legs, and decreased sensation in both feet on September 16, 2003 (AR 238); diminished reflexes in the left knee (AR 236); tenderness, positive straight-leg raising, and a non-antalgic gait with normal muscle strength on November 3, 2004 (AR 191); difficulty walking, changing positions, or getting on the examination table on December 13, 2004 (AR 205); muscle spasm, positive straight-leg raising on the left, antalgic gait, and decreased strength on right knee extension on the same date (AR 206); difficulty walking, changing positions, tenderness, restricted range of motion, muscle spasm, diminished reflexes of the ankles and knees on November 28, 2005 (AR 218); difficulty walking or changing positions on November 29, 2006 (AR 417, 420, 422); difficulty walking, spasm, antalgic gait, and reduced range of motion on May 1, 2007 (AR 410); a recommendation by the treating physician that Plaintiff needed the assistance of a walker because of difficulty in walking, changing position, muscle spasm, restricted range of motion, and an antalgic gait (AR 414).

At the hearing in this matter on October 16, 2007, the ALJ utilized Dr. Sparks as a testifying medical expert. (AR 7-46.) Having reviewed the medical evidence, which the Court has only briefly summarized, Dr. Sparks testified that Plaintiff meets Listing 1.04A (disorders of the spine). This resulted in several pages of questioning by the ALJ as to the basis for the ME's findings. (AR 21-

26.)  This testimony reveals that the ME had relied upon the full extent of the medical record as a basis for his opinion that Plaintiff met Listing 1.04.  Indeed, during the questioning, the ALJ repeatedly disputed whether Plaintiff met the Listing, indicating, at one point that Plaintiff did not have neuropathies (AR 23), which was immediately corrected by the ME, who stated there is neuropathy, and described the medication Plaintiff was taking for that condition. (AR 24.)

Despite adhering to his opinion that Plaintiff met a Listing, the ME then rendered opinions as to Plaintiff residual functional capacity ("RFC") both prior to December 2004, and after December 2004, which clearly contradicted his earlier assertions that Plaintiff met a Listing. (AR 25-26.)  There is no indication in the record as to the ME's basis for providing these contradictory opinions, nor were they addressed in any fashion by the ALJ.  Rather, the ALJ determined to accept the ME's RFC determination, in fact adopting it in its entirety. (AR 57.)

The Commissioner attempts to reconcile this obvious contradiction in the following portion of the JS:

> "While Dr. Spark [sic] may have opined in his earlier testimony that Plaintiff's medical evidence was consistent with meet [sic] a Listing, his subsequent testimony regarding Plaintiff's assessed limitations was not consistent with the finding. (Citation to record.)  And because of this conflicting testimony, the ALJ rejected Dr. Sparks' opinion that Plaintiff met Listing 1.04A, but accepted Dr. Sparks' opinion regarding Plaintiff's functional limitations. (Citation to record.)"

4

(JS at 11.)

The Court finds neither a logical basis for this reasoning, or anything in the record which would substantiate it. As the Court has indicated, there is extremely substantial medical evidence in this record concerning Plaintiff's back condition and its resulting effects. Despite that, and despite the fact that the ME relied upon this medical evidence, it is at best cursorily addressed in the ALJ's decision. (See AR at 58.) Moreover, the ALJ clearly misinterpreted the record in concluding that the ME's opinion was based solely on a worker's compensation report of December 13, 2004. (See AR at 57.) The ME's testimony indicates to the contrary; that is, he relied upon all of the medical evidence in the record, and only as to the continuing nature of the disability did he rely upon the report of the worker's compensation physician. (See AR at 21.)

While it is clearly the law that an ALJ need not accept the entire opinion of a medical source, that principle is somewhat turned on its head by the result in this case. There is a clear and obvious contradiction between the ME's testimony that Plaintiff meets a Listing, and his later testimony that Plaintiff has an RFC which would negate a finding of disability. The ALJ, who took such an active part in the questioning, must have been aware of this contradiction, but chose not to address it during the hearing. Rather, he appears to have simply adopted that portion of the ME's testimony which supports a finding as to Plaintiff's ability to work, rather than a finding which would lead to a conclusion of disability. Further, the Court agrees with Plaintiff's interpretation of Appendix 1, Section 1.00D, which advises that the longitudinal record should be evaluated in

1  determining whether a claimant meets or equals this Listing.

2  The Commissioner cites <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 348 (9th 3  Cir. 1991)(<u>en</u> <u>banc</u>), for the proposition that the ALJ need not accept 4  any medical opinion which contains inconsistencies and ambiguities. 5  (<u>See</u> JS at 14.)  The Court does not accept this precedent as 6  supporting the proposition that fundamentally contradictory testimony 7  by an ME at a hearing before an ALJ can be parsed by the decision 8  maker so as to accept part of the testimony, and reject the 9  contradictory part, without an appropriate explanation.  The hearing 10 before the ALJ was supported by the live testimony of the ME.  The ALJ 11 does not act a silent fact-finder in these hearings, but is charged 12 with exploring and developing the record.  In the case of an obvious 13 and fundamental contradiction, such as is presented by this testimony, 14 the Court finds that the ALJ was under a duty to clarify the 15 contradiction, in order to determine the ME's ultimate opinion, and 16 the basis for it.  The failure to do that constitutes reversible 17 error, and this matter will be remanded for further hearing consistent 18 with this decision.

19 Since, on remand, the entire medical record should be considered, 20 the question of Plaintiff's credibility with regard to his subjective 21 symptoms must, necessarily, be reevaluated.  The Court will, 22 therefore, not further address the second issue.  Plaintiff's 23 credibility will be subject to <u>de</u> <u>novo</u> determination on remand.

24 //
25 //
26 //
27 //
28 //

1  For the foregoing reasons, this matter is remanded for further
2 hearing and development of the record in conformity with this
3 decision.
4  **IT IS SO ORDERED.**
5
6 DATED: April 24, 2009                    /s/
                                     VICTOR B. KENTON
7                                    UNITED STATES MAGISTRATE JUDGE

7